```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|                          |   |                                |
|--------------------------|---|--------------------------------|
| LLOYD A. MASSEY,         | : |                                |
|                          | : |                                |
|            Petitioner,   | : | Civil Action No. 11-7261 (RMB) |
|      v.                  | : |                                |
|                          | : |                                |
| CHARLES WARREN et al.,   | : | **MEMORANDUM OPINION AND ORDER** |
|                          | : |                                |
|            Respondents.  | : |                                |

This matter comes before the Court upon the Court's review of the submissions made thus far in this action, and it appearing that:

On June 28, 2011, Petitioner Lloyd A. Massey ("Petitioner") submitted for filing a habeas petition ("Petition"), executed pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence rendered by the Superior Court of New Jersey, Law Division ("Law Division") on September 19, 2002. See Docket Entry No. 1, at 3. This Court, therefore, directed Respondents to answer Petitioner's challenges. See Docket Entry No. 5.[1]

---

[1] Petitioner has been represented by the New Jersey Office of Public Defender. While, generally, a notice as to a litigant's rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), is not issued to represented petitioners, the Court, being mindful of the complexities suggested by Petitioner's application, found it prudent to advise him of his Mason rights. See Docket Entry No. 3. Petitioner confirmed that he wished to proceed with his challenges as filed. See Docket Entry No. 4.

On July 11, 2012, Respondents filed their answer. See Docket Entries Nos. 9 to 15. While Respondents' submission amounted, in toto, to seven-thousand-seven-hundred-eighty-five (7,785) pages, see id., Respondents' answer, with the caption and certification included, were a mere seven and a half pages. See Docket Entry No. 9. Respondents' index of the exhibits (which were the remainder of Respondents' submission) merely offered the Court a count from 1 to 105, thus requiring the Court to sift through thousands of pages, relate them to such docket entries identified merely as "1a, 1b, 2a, 2b," and piece together an argument in Respondents' favor. See Docket Entry No. 9-1; see also Docket Entries Nos. 9 to 15.

Respondents' unacceptable answer contained neither a counter-statement of facts underlying Petitioner's conviction nor a summary of the procedural developments that took place in the state forum. See Docket Entry No. 9. Moreover, with regard to each of Petitioner's challenges, the answer failed to detail any of the facts or bases for the legal position taken or citations given. Rather, Respondents stated, in a conclusory fashion, that they disagreed with Petitioner's claims and "incorporate[d] the arguments set forth" in the prosecutorial briefs presented to the Superior Court of New Jersey, Appellate Division ("Appellate Division"). Respondents also stated that they were in agreement with the Appellate Division's rulings, see, e.g., Docket Entry

Page 2

No. 9, at 2 ("[R]espondents rely upon the trial court's reasoning as it denied the admission of evidence, and later rejected [Petitioner's] motion for a new trial, partly on those grounds").[2]

Petitioner filed his traverse, see Docket Entries Nos. 17 and 18 (re-filed to comply with the Clerk's directive for re-designate the traverse as "Reply to Response" rather than "Reply to Answer"). The traverse informed this Court about the factual and procedural background of Petitioner's claims and stated his position with clarity.

For the reasons not entirely clear to the Court, Respondents responded to that filing by docketing a "quasi-reply" of multiple additional exhibits in the amount of 484 pages, which arrived accompanied by a single sentence stating that said submission was "a redacted copy of Exhibit 3." See Docket Entries Nos. 19 to 21. That brought the overall volume of Respondents' exhibits to a formidable mass of eight-thousand-two-hundred-sixty-nine (8,269) pages.

---

[2] See also Docket Entry No. 9, at 2-4 (making references to certain body of unspecified "evidence in question" without any explanation what that evidence was and why it did not have to be produced, or to the witness identified as "Karen Simpkins" without any explanation what Ms. Simpkins testified to and how, or to certain unspecified "gun parts" and "AK used in this case" without any explanation as to the nature of these objects and the correlation – or lack thereof – between them, or to a ruling as to some unspecified results of an unspecified witness' polygraph test without any explanation what these results were, why their production was sought and why it was rejected.)

Respondents' reply seemingly prompted Petitioner's filing of a de facto sur-reply, which was docketed on January 8, 2013, titled, puzzlingly, "Pre-trial Memorandum."[3]  See Docket Entry No. 22.

While Petitioner here raised only a handful of claims, the case at bar is both complex and fact-sensitive because the issue at the heart of this case is a potential witness misidentification.[4]  This Court cannot be expected to rule intelligently on the docket before it.  Nor can the Court be expected to read thousands of pages, correlate each exhibit to a particular docket entry, and piece together Respondents' case.  Moreover, this Court cannot rely on Respondents' unelaborated arguments or the position raised before the Appellate Division or that court's finding.  Rather, the Court is obligated to examine those findings, as well as the findings made by the Law Division

---

[3] There are no "trials" in federal habeas matters. Generally, habeas applications are resolved on the record filed, albeit the court sitting in federal habeas review has the power and obligation to conduct evidentiary hearings in appropriate circumstances.

[4] In other words, while both sides are in agreement that a criminal offense at issue was indeed committed, the key point in dispute is whether the state court proceedings duly protected Petitioner's rights during his trial (and following proceedings) as a result of which Petitioner was found to be the perpetrator of that particular offense.  The Court of Appeals' case law indicates that such matters warrant a particularly careful attention to the facts.  Accord Johnson v. Folino, 705 F.3d 117 (3d Cir. Pa. 2013); cf. Grant v. Lockett, 709 F.3d 224 (3d Cir. 2013); Lambert v. Beard, 2013 U.S. App. LEXIS 19406 (3d Cir. Sept. 20, 2013); Thomas v. Varner, 428 F.3d 491 (3d Cir. 2005).

and the Supreme Court of New Jersey, and determine whether those decisions: (a) were "contrary to" the "governing legal principle set forth by the [United States] Supreme Court" at the time the state courts rendered their decisions; or (b) "confront[ed] a set of facts that [were] materially indistinguishable from a decision of the [United States Supreme] Court and nevertheless arrive[d] at a [different] result." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003); Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Hence, Respondents' argument can be based only on the governing United States Supreme Court precedent, applied to the specific facts implicated by each of Petitioner's challenges, and it is Respondents – rather than the Court – who are obligated to establish to the Court's satisfaction that the decisions on which Respondents rely were not contrary to that precedent.

Therefore, as submitted, Respondents' filings are woefully deficient.

IT IS, therefore, on this **30th** day of **October 2013**,

**ORDERED** that, within forty-five days from the date of entry of this Memorandum Opinion and Order, Petitioner shall file with the Clerk and serve upon Respondents Petitioner's amended petition and supporting memorandum of law stating each ground Petitioner wishes to raise in this matter, detailing the factual predicate and the legal claim asserted in support of each ground. In addition, Petitioner's legal position shall reflect on: (a)

the arguments offered by Respondents thus far; and (b) the guidance provided by the Court of Appeals in the decisions interpreting the governing Supreme Court precedent; and it is further

**ORDERED** that, within forty-five days from the date of Petitioner's service of his amended petition upon Respondents, Respondents shall file with the Clerk and serve upon Petitioner Respondents' amended answer.  That amended answer shall contain Respondents' counter-statement of facts and a summary of procedural developments that took place in the state courts.  In addition, that amended answer shall address each of Petitioner's grounds by detailing the relevant facts and governing Supreme Court precedent, and the legal bases for Respondents' position why, under the governing test and interpretative guidance provided by the Court of Appeals, habeas relief is not warranted. Respondents shall neither make generic arguments of their disagreement with Petitioner (or their agreement with the favorable findings made by state courts) nor raise any arguments based on state law.  In the event Respondents want to rely on federal law arguments raised during state proceedings, Respondents shall expressly detail the same, not asserting any "incorporation by reference" response.  Respondents' failure to comply with these requirements will be addressed, if necessary. "The Court stresses that it takes its obligations in this and

every action seriously, and so should Respondents," Williams v. Ricci, 2011 U.S. Dist. LEXIS 51959, at *6-7 (D.N.J. May 13, 2011); and it is further

**ORDERED** that all affirmative defenses, if any, shall be raised in Respondents' amended answer in addition to the defenses addressing the merits of Petitioner's claims; and it is further

**ORDERED** that the amended answer shall include a *proper* index of Respondents' exhibits. Such index shall refer to each exhibit as docketed by Respondents in the *instant* matter, e.g., "Docket Entry No. 9-5" (not "RA4" or "Exhibit D"), and the same mode of citation shall be utilized for the purposes of all statements and quotations made in Respondents' amended answer. In the event the 8,269 pages of the exhibits docketed thus far in conjunction with Respondents' original answer and as a de facto reply did not include the material relied upon by Respondents in their amended answer, Respondents shall docket that material jointly with their amended answer. The Court stresses that, in light of the sheer volume of Respondents' exhibits, Respondents' index and references to the relevant exhibits and the particular text within each exhibit should be made "user-friendly," accord Orange Unified Sch. Dist. v. C.K., 2012 U.S. Dist. LEXIS 92423, at *11 (C.D. Cal. June 4, 2012) ("Counsel is advised to submit the [required material] in a logical, user-friendly manner and to provide an index"); and it is further

**ORDERED** that Respondents shall file their amended answer, the proper index of their exhibits and the additional exhibits, if any, electronically. No document shall be filed in hard copy in this matter unless Respondents seek and obtain this Court's order allowing Respondents such filing; and it is further

**ORDERED** that Respondents shall serve their amended answer, the proper index of their exhibits and the additional exhibits, if any, upon Petitioner; and it is further

**ORDERED** that, within thirty days from the date of Petitioner's receipt of the amended answer, Petitioner shall file and serve his traverse to the amended answer; and it is further

**ORDERED** that, in the event Respondents, being served with Petitioner's traverse, develop a <u>bona fide</u> belief that the filing of a reply is warranted, Respondents shall make a formal application seeking the same. Such application shall be made within thirty days from the date of Respondents' receipt of the traverse. In the event the Clerk receives no such application, Respondents' opportunity to file a sur-reply will be deemed conclusively waived;[5] and it is further

**ORDERED** that, within ten days of Petitioner's release, be it on parole or otherwise, Respondents shall file a written notice of the same with the Clerk; and it is further

---

[5] If Respondents are granted leave to reply, Petitioner would be allowed an opportunity to file his sur-reply.

**ORDERED** that the Clerk shall administratively terminate this matter for the period of re-briefing required by the terms of this Memorandum Opinion and Order by making a new and separate entry on the docket reading, "CIVIL CASE ADMINISTRATIVELY TERMINATED SUBJECT TO REOPENING UPON COMPLETION OF RE-BRIEFING. ADMINISTRATIVE TERMINATION IS NOT A DISMISSAL, AND NO STATEMENT IN THIS MEMORANDUM OPINION AND ORDER SHALL BE DEEMED A CONCLUSIVE DISPOSITION ON THE MERITS. THE COURT RETAINS ITS JURISDICTION OVER THIS MATTER AND RESERVES ITS FINAL DETERMINATION."[6] ; and it is further

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner and Respondents by means of electronic delivery; and it finally

**ORDERED** that, within ten business days from the date of the Clerk's service of this Memorandum Opinion and Order Petitioner

---

[6] See Williams, 2012 U.S. Dist. LEXIS 177857, at *69 ("The Clerk will be directed to administratively terminate this matter; the Court will order reopening of this action upon receipt of Respondents' answer to Petitioner's remaining claims, and Petitioner's filing of his traverse"); see also Papotto v. Hartford Life & Accident Ins. Co., 2013 U.S. App. LEXIS 19660, at *26 (3d Cir. Sept. 26, 2013)("[A]dministrative closings do not end the proceeding. Rather, they are a practical tool used by courts to prune overgrown dockets.")

and Respondents shall file their respective notices acknowledging their receipt of this Memorandum Opinion and Order.

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**